[Cite as *State v. Poindexter*, 2021-Ohio-1499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-394 |
| v. | : | (C.P.C. No. 16CR-6188) |
| Jaquon L. Poindexter, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 29, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sarah V. Edwards*, for appellee.

**On brief:** *Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROGAN, J.

{¶ 1} Defendant-appellant, Jaquon L. Poindexter, appeals the judgment of the Franklin County Court of Common Pleas convicting him of aggravated murder, murder, two counts of attempted murder, two counts of felonious assault, aggravated burglary, two counts of aggravated robbery, and associated firearm specifications. For the following reasons, we affirm the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} A drug-deal connected robbery culminating in an exchange of gunfire inside of a Franklin County residence on October 25, 2016 led to the death of two-year old "A.B.," gunshot wounds to both parents, Julian Bice and Jessica Stanford, and a multiple-count indictment naming Poindexter and a co-defendant, Norman Burke, as the perpetrators of

aggravated murder, murder, attempted murder, felonious assault, burglary, and robbery, each with attached gun specifications. Poindexter entered a plea of not guilty; Burke entered a guilty plea, was offered a plea deal, and was slated to testify on behalf of the state. The case proceeded to a jury trial on May 14, 2019.

{¶ 3}    Bice and Stanford testified that in 2016 they lived with A.B. in Stanford's house on Parkwick Drive. Bice sold drugs to make money and obtained some of the drugs he sold from a friend, Diamond Lewis, who had a prescription for the narcotic Percocet. Lewis was addicted to painkillers due to his lifelong affliction with sickle cell anemia, and Bice eventually provided Lewis with stronger narcotics. Several months prior to the shooting, while Bice was in jail, Lewis met another drug dealer known as "Fat Boy" and soon owed him a drug debt. (Tr. at 312.) When Bice got out of jail, Lewis introduced Bice to Fat Boy as a possible drug supply source.

{¶ 4}    On the morning of the shooting, Bice and Fat Boy communicated in order to arrange the exchange of 100 pills for $2,400. Fat Boy indicated that he was going to send two "guys from Detroit" to Bice's house with the pills. (Tr. at 201.) This made Bice uncomfortable because they were unknown to him, so he tried to cancel the deal. Nevertheless, around dinner time, an unknown older black male arrived and indicated he was sent by Fat Boy for the deal. According to Bice, he first asked the older male, identified as Burke, to move his car to a different parking spot on the street. When Burke returned, a younger black male with face tattoos was with him, and they entered the house with Bice. The three men initially went toward the kitchen, where Stanford stood feeding A.B. in a highchair. According to Stanford, the younger male shook her hand and introduced himself but would not look at her while doing so. The younger male then went toward a nearby bathroom.

{¶ 5}    Almost immediately, Burke dropped a towel that he was holding, which Bice interpreted as a signal to the younger male and told them "Get the F on the floor." (Tr. at 216.) Bice thought he heard a "gun sound" and saw Burke hold something in his sweatshirt. (Tr. at 218.) Bice drew his own firearm, charged at Burke, and fired: a shot struck Burke. Bice did not see Burke fire any shots in return. Bice then turned to address the younger male, who had been standing in a small hallway near the restroom and stairs. Bice "looked right at [the younger male]" and saw him "running towards the stairs shooting at [Bice]."

(Tr. at 221.) One of the shots hit Bice in his eye, and he collapsed near a fish tank in the living room. The shots fired by the younger male sprayed into the kitchen, striking both Stanford and A.B. in the head. Stanford was wounded, and A.B. was killed. Lewis, who was also in the house but did not see the shooting itself, called 911.

{¶ 6} Burke and the younger male fled the home. Burke, having been shot by Bice, approached a nearby home for help and was quickly apprehended by police. The younger male was not apprehended immediately, prompting an investigation into his identity by detectives.

{¶ 7} The lead detective in the case, Robert Cutshall, testified that Burke eventually provided law enforcement the name of "Quamie" Poindexter as his co-conspirator. (T. 634-35.) Reviewing existing mugshots, Cutshall cultivated appellant Jaquon Poindexter as a suspect due to his "[e]xtremely distinguishable" tattoos on his face. (Tr. at 635.) Using Poindexter's mugshot, Cutshall developed a photo array that included Poindexter's photograph grouped with five other individuals and had officers unfamiliar with the case present the array to Bice, Stanford, and Burke while they were still in the hospital. According to Cutshall and the "blind administrator" of the photo array, detective Mike Williams, Burke identified Poindexter in the array as the younger male who was with him. (Tr. at 602, 605, 635-36.) Bice and Stanford also identified Poindexter in the photo array as the younger male involved in the shooting while they were in separate hospitals being treated for their respective injuries. Detective Cutshall additionally interviewed Lewis, who described the younger male as having "a tattoo under his eye"; when presented with a photo array without Poindexter's photo, Lewis refused to make a selection and reiterated that the younger male had face tattoos. (Tr. at 337, 400, 596-97, 630.)

{¶ 8} Detective Cutshall eventually interviewed Poindexter; the interview was played in court. Poindexter indicated that he knew nothing about the shooting and immediately recalled that on the Tuesday evening of the shooting he was hanging out at a Taco Bell while one of his brothers, Jajuon, and a friend, Armani Luney, worked there. He told detectives that Jajuan and Luney could corroborate his story. After investigating the alibi, Cutshall found that Poindexter's version of events did not square with the Taco Bell manager's recollection. He re-confronted Jajuan and Luney and, while Poindexter's brother continued to defend Poindexter's account, Luney did not. Luney testified that he lied to

police when he said that Poindexter was at Taco Bell at the time of the shooting. The manager of Taco Bell also testified that Poindexter's brother was not scheduled to work the evening of the shooting and that she did not see Poindexter there that evening.

{¶ 9} Three operable guns were recovered at the scene of the shooting but, according to the testifying ballistics expert, only one of them could be linked to shell casings and projectiles at the scene. Shell casings found in the kitchen matched the ammunition found loaded in a "Smith & Wesson" 9-millimeter gun that police recovered, with blood on it, near a fish tank in the living room. (Tr. at 748.) Bice claimed ownership of the Smith & Wesson gun and his DNA was found on it. The other two guns at the scene, a black and pink "SCCY pistol" recovered in the bedroom nightstand that Stanford claimed ownership of and a "Beretta" loaded with 9 millimeter "ZQ1" ammunition recovered from behind the front door to the home, did not match shell casings at the scene. (Tr. at 478-79, 748-49.) The DNA profiles submitted for the SCCY and the Beretta were not of sufficient quality for comparison purposes.

{¶ 10} Approximately a month after the shooting, on November 28, 2016, a fourth gun—a ".380 Ruger"—was recovered from underneath a back porch of one of Bice and Stanford's neighbors; the gun was operable and loaded with ".380 Hornady" ammunition. (Tr. at 522, 24.) Video evidence showed that around the time of the shooting a black male ran in the direction of the unenclosed yard where the .380 Ruger was discovered. A ballistics expert identified this firearm as the same .380 handgun that left shell casings— four on a basement landing and one under the fish tank—and a bullet fragment recovered at the scene of the shooting. Swabs from the exterior of the firearm were not sufficient for comparison purposes. A DNA analyst explained that, if an item is left outside, "[p]otentially extreme weather can affect DNA and alter the DNA on there, so ultimately we will not get a good profile." (Tr. at 580.) However, suitable DNA was found on the magazine located inside of the Ruger .380. Poindexter and Burke were excluded as a major contributor of DNA to the magazine, but the DNA collected from the magazine was consistent with both an unknown contributor and Poindexter's other brother, Jashon (not the same brother who provided police with the Taco Bell alibi).

{¶ 11} Poindexter and Jashon lived together. According to Detective Cutshall, who personally interviewed both Poindexter and Jashon, the brothers did not look similar. In

particular, Jashon did not have face tattoos. A BMV photograph of Jashon was submitted to the jury; in the photograph Jashon does not appear to have face tattoos. (State's Ex. 415.)

{¶ 12} During their respective testimony, Bice and Stanford confirmed they identified Poindexter in the photo arrays presented to them while they were in the hospital. The defense questioned Bice about possibly indicating that Burke was the shooter during the identification, stating the photo of Poindexter "looks a lot like" the younger male, and not being fully truthful with the police about selling drugs at the house, for example. (Tr. at 272.) Bice testified that he has never wavered as to Poindexter being the younger male who entered the house and reiterated that only Poindexter fired shots. When asked why he picked out Poindexter in the photo lineup, Bice replied, "because I'll never forget that face a day in my life" and "I watched him shoot me in the eye." (Tr. at 242-43.) The defense also questioned Stanford about taking a few minutes to make a selection from the photo array. Stanford testified that she took a few minutes to close her eyes and replay the events in her head and that when she picked Poindexter out of the photo array she was "100 percent" sure of her pick. (Tr. at 837.) Bice, Stanford, and Lewis also identified Poindexter in the courtroom as the younger male involved in the shooting; Bice identified Poindexter as the specific person who fired the shots at him and into the kitchen. (Tr. 208, 246, 352-53, 401, 838.)

{¶ 13} Burke decided to not testify for the state. Sworn in, but outside of the presence of the jury, Burke told the judge he was rejecting the plea deal offered by the state and he would not testify truthfully for the state as promised. Burke's decision to not testify occurred after detectives Williams and Cutshall testified about Burke selecting Poindexter out of a photo array. The photo array shown to Burke was not admitted into evidence.

{¶ 14} After the close of the state's case, the defense moved to acquit Poindexter under Crim.R. 29; the trial court overruled the motion. The defense additionally filed a motion for mistrial based, in relevant part, on detective Williams' testimony at trial regarding Burke identifying Poindexter out of a photo array, considering Burke did not subsequently testify at trial. The court denied the motion, reasoning that he could "deal with that in a limited instruction to the jury" and that, regardless, the evidence presented "on itself without any contribution by Mr. Burke is overwhelming against [Poindexter]" and therefore does not affect him. (Tr. at 875.) Unlike in its opening statement, the state did not

mention Burke's identification of Poindexter in its closing argument to the jury. The judge gave the following limiting instruction to the jury immediately prior to reading the full jury instructions: "Detective Michael Williams, his performance as the blind administrator of the photo array to Norman Burke, at this time you are instructed to disregard the testimony of Detective Michael Williams, administrator of the photo array to Norman Burke. You may not use this information for any reason in your deliberations." (Tr. at 920.)

{¶ 15} The state requested that two counts of the indictment be dismissed, and the trial court granted the request. Ultimately, Poindexter was convicted of the remaining nine counts with their attendant specifications. At sentencing, and after merging several counts, the trial court sentenced Poindexter to life without parole, consecutive to 55 years (11 years each for the five remaining first-degree felonies), consecutive to two 3-year firearm specifications.

{¶ 16} Poindexter filed a timely appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 17} Poindexter assigns the following as trial court error:

> 1. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S R. 29 MOTION FOR ACQUITTAL.
>
> 2. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> 3. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTIONS DECLARATION OF A MISTRIAL.

## III.  ANALYSIS

### A.  First Assignment of Error

{¶ 18} Under his first assignment of error, Poindexter contends the trial court erred in overruling his Crim.R. 29 motion for judgment of acquittal, as the state failed to offer sufficient evidence to prove he was the person who caused the victims' injuries. For the following reasons, we disagree with Poindexter.

{¶ 19} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient

to sustain a conviction of such offense or offenses." Crim. R. 29(A). "Because a Crim.R. 29 motion questions the sufficiency of the evidence, we apply the same standard of review on appeal as in a challenge to the sufficiency of the evidence." *State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 40.

{¶ 20} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 21} In this case, Poindexter argues only that the state did not satisfactorily prove that Poindexter "caused the injuries suffered by the alleged victim as required by law" and asserts that a "different individual" harmed the victims. (Poindexter's Brief at 5-6.) He asserts that his "DNA was nowhere to be found on the firearm used during the robbery" and that "[t]he only evidence linking [Poindexter] to the injuries and murder was the unreliable testimony of convicted felons and drug addicted individuals." (Poindexter's Brief at 6.)

{¶ 22} Poindexter's contentions lack merit. First, the state is not obligated to produce DNA evidence linking a defendant to the crime to secure a conviction. *State v. Martin*, 1st Dist. No. C-150054, 2016-Ohio-802, ¶ 22 ("While the absence of DNA evidence is probative, it is not dispositive."); *State v. Williams*, 8th Dist. No. 106998, 2019-Ohio-10, ¶ 22 ("Physical evidence is not required to sustain a conviction."). Rather, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *State v. J.M.*,

10th Dist. No. 14AP-621, 2015-Ohio-5574, ¶ 17 (finding victim's testimony identifying the defendant as the assailant, alone, sufficient to support the conviction despite the lack of conclusive DNA evidence). *State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 10 (10th Dist.) ("Although no weapon or forensic evidence tied defendant to the shooting, Wilmer, Wilson, and Pyfrom all were present at the scene, saw the shooter and identified defendant as the shooter.").

{¶ 23} Here, the state produced three witnesses—Bice, Stanford, and Lewis—who identified Poindexter as the younger male who entered the house with Burke, and Bice further testified that he saw Poindexter fire the gun at him and toward the kitchen and that Burke did not fire a gun. If believed, this testimony alone is sufficient to support Poindexter's convictions. *See, e.g., J.M.* at ¶ 17; *State v. Nickell*, 10th Dist. No. 13AP-336, 2013-Ohio-5144, ¶ 18 (finding both the victim's pretrial identification and in-court identification of the defendant as the assailant to be legally sufficient to support a conviction).

{¶ 24} Furthermore, the arguments Poindexter presents regarding "unreliable" testimony concerns a matter of weight, rather than the sufficiency, of the evidence. *State v. Hudson*, 8th Dist. No. 91803, 2009-Ohio-6454, ¶ 44. "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz*, 2018-Ohio-3942, ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence). As such, we will address these considerations under our review of the manifest weight of the evidence in the second assignment of error. *State v. Sieng*, 10th Dist. No. 18AP-39, 2018-Ohio-5103, ¶ 51.

{¶ 25} Considering all the above, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the state proved, beyond a reasonable doubt, that Poindexter was the person who committed the charged crimes. *Robinson*, 2009-Ohio-5937 at ¶ 34; *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus. Therefore, Poindexter's contention that the state failed to present sufficient evidence to support his convictions lacks merit.

{¶ 26} Accordingly, the first assignment of error is overruled.

**B. Second Assignment of Error**

{¶ 27} Under his second assignment of error, Poindexter contends his convictions are against the manifest weight of the evidence. For the following reasons, we disagree.

{¶ 28} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387. "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38. *State v. Dennis*, 10th Dist. No. 08AP-369, 2008-Ohio-6125, ¶ 39 ("[t]he weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other").

{¶ 29} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson*, 2016-Ohio-7130, at ¶ 34, citing *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *Martin* at 175.

{¶ 30} In this case, Poindexter contends the jury lost its way in finding Poindexter guilty of the charges since the unreliable and "self-serving testimony of the witnesses cannot conclusively demonstrate that [Poindexter] was the cause of the bodily harm or death"; "there was testimony that [Poindexter]'s DNA was not on the firearm used"; and "there was testimony that [Poindexter]'s brother's DNA was located on the firearm." (Poindexter's Brief at 7.) We note that Poindexter does not argue against the .380 Ruger being the weapon responsible for the injuries to the victims and, correspondingly, that the holder of that weapon is the principal offender. He likewise makes no argument going to

issues of complicity and aiding and abetting. Rather, Poindexter appears to argue that the greater weight of credible evidence shows that he was not at the scene of the crime at all.

{¶ 31} We disagree that the evidence in this case weighs heavily against Poindexter's convictions. First, Poindexter does not elaborate why the testimony implicating Poindexter was "self-serving" to any of the witnesses. (Poindexter's Brief at 7.) We decline to search the record or craft an argument on his behalf in this regard. *State v. Nelson*, 10th Dist. No. 19AP-548, 2020-Ohio-4657, ¶ 18, fn. 3, citing *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Smith*, 9th Dist. No. 15AP0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf); App.R. 16(A)(7) and 12(A)(2).

{¶ 32} Poindexter additionally argues that the jury could not rely on the state's eyewitness testimony since, essentially, those witnesses lack credibility due to their prior convictions and drug addictions. Contrary to Poindexter's argument, the testimony of a witness who is addicted to drugs or was previously convicted of a felony is not necessarily unreliable; other factors—such as corroborating evidence and the witness's consistency on material points, forthright manner, and lack of motive to lie about the defendant—can reinforce that witness's credibility and may support a conviction based on the witness's account. *See, e.g.*, *State v. Williams*, 10th Dist. No. 14AP-546, 2015-Ohio-1136, ¶ 9-12, 32, 35-40 (finding a defendant's conviction, which was largely based on the identification testimony of a witness who admitted to being a drug addict, using drugs throughout the day of the crime, and being on probation for other crimes, was not against the manifest weight of the evidence due to her lack of credibility).

{¶ 33} The trier of fact is in the best position to determine whether a witness is credible and whether his or her testimony is reliable. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) ("we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony' "). Therefore, typically, "[m]ere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*,

10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *discretionary appeal not allowed*, 140 Ohio St.3d 1455 (2014).

{¶ 34} Here, the state presented three witnesses who identified Poindexter as the younger male in the house and Bice as an eyewitness to Poindexter shooting at him and toward the kitchen. The jury heard extensive discussion of the witnesses' drug and legal problems as well as testimony explaining why the witnesses were not initially fully forthcoming to police about the events transpiring on the day of the shooting. The jury determined those witnesses were nevertheless reliable in naming Poindexter as the assailant. We agree with that assessment. Bice, Stanford, and Lewis never wavered in identifying Poindexter and did so adamantly in court. They were able to recount the events surrounding the shooting lucidly and consistently with each other on material points. Poindexter points to no evidence that these witnesses benefited from or otherwise had a motive to testify against him; Bice emphasized his motivation to bring the killer of his child to justice.

{¶ 35} Furthermore, the jury could have reasonably considered the presence of the DNA of Poindexter's brother, Jashon, on the magazine of the .380 Ruger to be evidence that corroborated the witnesses' identification of Poindexter rather than evidence that exonerated him. The DNA evidence was found inside of the gun on the magazine, Poindexter lived with Jashon, and Poindexter—not Jashon—looked like the younger male suspect identified by the eyewitnesses. Likewise, the jury could reasonably have reasonably determined that the lack of Poindexter's DNA on the .380 Ruger was not exculpatory in this case. The state's DNA analysis expert testified that outdoor conditions could affect the availability of DNA on a gun, and, previously discussed, "[p]hysical evidence is not required to sustain a conviction." *Williams*, 2019-Ohio-10, at ¶ 22. In other words, the lack of his DNA on the gun in this case does not outweigh the other credible evidence pointing to Poindexter as the assailant. *Williams* at ¶ 39 (holding that the lack of physical evidence connecting the defendant to the scene of the shooting does not render the jury's conviction against the manifest weight of the evidence where the state presented the testimony of an eyewitness along with corroborating evidence); *State v. Peeples*, 10th Dist. No. 13AP-1026, 2014-Ohio-4064, ¶ 22 (holding that the lack of physical evidence connecting the defendant to the scene of the shooting does not render the jury's conviction against the manifest

weight of the evidence where the state presented the testimony of eyewitnesses). *State v. Garner*, 10th Dist. No. 07AP-474, 2008-Ohio-944, ¶ 13 ("[T]he state was not required to provide physical evidence placing appellant at the scene of the crime, nor was it required to establish any connection between appellant and the victims. The state could have carried its burden of proof solely through identification testimony.").

{¶ 36} Considering all the above, this is not the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d 380, at 387. The jury heard testimony from the witnesses and were able to personally observe the witnesses' demeanor, gestures, and voice inflections and used these observations in weighing the credibility of all the witnesses. Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we find the jury did not clearly lose its way and create such a manifest miscarriage of justice that Poindexter's convictions must be reversed and a new trial ordered. *Patterson*, 2016-Ohio-7130, at ¶ 34. Therefore, Poindexter's convictions are not against the manifest weight of the evidence.

{¶ 37} Accordingly, the second assignment of error is overruled.

### C. Appellant's Third Assignment of Error

{¶ 38} Under his third assignment of error, Poindexter contends the trial court erred in denying his motion for a mistrial. For the following reasons, we disagree with Poindexter that the trial court abused its discretion in failing to declare a mistrial on the facts of this case.

{¶ 39} "The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001), citing Crim.R. 33; *State v. Sage*, 31 Ohio St.3d 173, 182 (1987). "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." *State v. Reynolds*, 49 Ohio App.3d 27, 33 (2dDist.1988). Rather, "[t]he granting of a mistrial is necessary only when a fair trial is no longer possible." *Treesh* at 480. *See* Crim. R. 33(E)(5) ("No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of: * * * Any other cause, unless it affirmatively appears from the record that the defendant was prejudiced thereby or was prevented from having a fair trial.").

{¶ 40} Poindexter specifically contends that a mistrial was warranted since detective Williams testified that Burke identified of him in a photo array and Burke then did not testify at trial. According to Poindexter, detective Williams' testimony is hearsay contrary to the exception stated in Evid.R. 801(D)(1)(c), *State v. Lancaster*, 25 Ohio St.2d 83 (1971), and *State v. Turvey*, 84 Ohio App.3d 724, 737 (4thDist. 1992), which collectively provide, among other requirements, that a prior, out-of-court identification of the defendant is admissible if the identifier is made available for cross-examination at trial.[1] *See* Evid.R. 801(D)(1)(c) (stating that a statement of identification of a person soon after perceiving the person is not hearsay if the circumstances demonstrate the reliability of the prior identification and the declarant testifies and is able to be cross-examined); *Lancaster* at paragraph five of the syllabus (" '[p]rior identification of the accused may be shown by the testimony of the identifier, or by the testimony of a third person to whom or in whose presence the identification was made, where the identifier has testified and is available for cross-examination, not as original, independent or substantive proof of the identity of the accused as a guilty party, but as corroboration of the testimony of the identifying witness as to the identity of the accused' "); *Turvey* at 736, quoting *State v. Boston*, 46 Ohio St.3d 108, 124 (1989)[2] (stating, within the context of admitting a child's out-of-court identification of the perpetrator, that an out-of-court identification can be admitted if the court "conduct[s] a voir dire examination" of the identifier, under oath, subject to cross-examination).

{¶ 41} The state responds that the testimony is admissible not for its truth but in order to "set the scene as to how they arrived at [Poindexter] as being a suspect," and that regardless of any purported error, the trial court did not act unreasonably, unconscionably in denying the motion for mistrial since overwhelming evidence of Poindexter's guilt exists in this case. (State's Brief at 20.) The state additionally contends that Poindexter did not

---

[1] We note that while Poindexter (and the state) acknowledge Burke as his "co-defendant," Poindexter does not cite to or make an argument under *Bruton v. United States*, 391 U.S. 123 (1968) or *State v. Moritz*, 63 Ohio St.2d 150 (1980), which provide that a defendant's right to confrontation is violated where the state offers, for their truth, any portions of statements of a co-defendant made to police that directly or indirectly inculpate the defendant. Poindexter likewise does not challenge detective Cutshall's testimony discussing Burke.

[2] *See State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 35 for discussion of the modification of *Boston* in *State v. Dever*, 64 Ohio St.3d 401 (1992).

properly preserve this issue for appeal by failing to make a contemporaneous objection to the alleged hearsay.

{¶ 42} We agree with the state that the trial court did not abuse its discretion in denying the motion for mistrial. As explained further below, even assuming the admission of Williams' testimony was erroneous, Poindexter has not shown that the record affirmatively demonstrates that he was prejudiced by Williams' testimony or was prevented from having a fair trial. Crim.R. 33(E)(5).

{¶ 43} First, even though the trial court based its decision on the lack of effect the testimony had on Poindexter's case due to the other overwhelming evidence of his guilt— in other words stating that Poindexter suffered no prejudice from the testimony— Poindexter did not provide this court with any legal argument as to why this holding was in error. As a result, Poindexter has not met his burden of demonstrating error on appeal. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34 ("An appellant must support their assignments of error with an argument, which includes citation to legal authority."), citing App.R. 16(A)(7) and 12(A)(2); *Smith*,, 2017-Ohio-359, at ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf).

{¶ 44} Second, even assuming for sake of argument that Poindexter is correct that Williams' testimony was improperly admitted and that he challenged the trial court's prejudice holding on appeal, we nonetheless do not find "reversible" error to be supported on the facts of this case. *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019*, ¶ 123-24. Where identification evidence is admitted contrary to Evid.R. 801(D)(1)(c) reversible error exists if the evidence prejudices the defendant. *State v. Nevins*, 171 Ohio App.3d 97, 2007-Ohio-1511, ¶ 41 (2d Dist.). Likewise, an error that implicates a constitutional right "does not require automatic reversal": such an error "can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78. The Supreme Court of Ohio in *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 46 explained that a constitutional error is not harmless if there is a reasonable probability that the evidence contributed to the defendant's conviction. *See also State v. Maranger*, 2d Dist. No. 27492, 2018-Ohio-1425, ¶ 68-69, citing *State v. Moritz*, 63 Ohio

St.2d 150, 150 (1980) ("[a] violation of an accused's right to confrontation and cross-examination is not prejudicial where there is sufficient independent evidence of an accused's guilt to render improperly admitted statements harmless beyond a reasonable doubt").

{¶ 45} Here, the two surviving victims in this case, Bice and Stanford, both identified Poindexter after the shooting while in the hospital and identified Poindexter again in court. An additional witness, Lewis, provided police with an identification matching Poindexter's description after the shooting and then identified Poindexter in court as the younger male who entered the house preceding the shooting. Poindexter's alibi witness admitted that he lied to the police that Poindexter was at Taco Bell at the time of the murder. Furthermore, DNA evidence found on the magazine of the .380 Ruger that the testifying analyst linked to Poindexter's brother, who he lived with and did not have face tattoos, supports the inference that Poindexter had access to the weapon used in the shooting. We find that in this case "properly admitted evidence provided overwhelming evidence of Poindexter's guilt" and in view of the remaining evidence establishing Poindexter's guilt Williams' identification testimony was harmless beyond a reasonable doubt. *Maxwell* at ¶ 123-24.

{¶ 46} We further note that the state did not discuss Burke's identification of Poindexter in its closing argument, and that the trial court's limiting instruction required the jury to disregard Williams' testimony entirely. *Treesh*, 90 Ohio St.3d, at 480 (finding the trial court did not abuse its discretion denying the defendant's motion for mistrial where the trial court issued a curative instruction indicating the jury could not use testimony infringing on the defendant's constitutional right to an attorney "in any way"). *Compare Ricks*, *generally* (finding a reasonable possibility that detective's testimony that an accomplice identified the defendant as the assailant contributed to the defendant's conviction where there were no eyewitnesses to the murder, the state in its closing argument used the identified testimony of the accomplice to tie the defendant to the murder, and the trial court's curative instruction did require the jury to disregard the testimony but rather instructed it to only consider the testimony to explain the course of the police investigation).

{¶ 47} Considering all the above, we do not find Poindexter demonstrated that it "affirmatively appears from the record that [he] was prejudiced" by Williams' testimony or

that he "was prevented from having a fair trial." Crim.R. 33(E)(5); *Treesh* at 480. Consequently, the trial court did not abuse its discretion in denying Poindexter's motion for mistrial.

{¶ 48} Accordingly, we overrule appellant's third assignment of error.

## V.  CONCLUSION

{¶ 49} Having overruled Poindexter's three assignments of error, we affirm the decision of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and BEATTY BLUNT, JJ., concur.

Brogan, J., retired, of the Second Appellate District, assigned to active duty under authority of Ohio Constitution, Article IV, Section 6(C).

_____