[Cite as *State v. Robinson*, 2021-Ohio-3715.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 19AP-697 |
| | | (C.P.C. No. 18CR-5371) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Sterling Robinson, | : | |
| Defendant-Appellant. | : | |

---

D E C I S I O N

Rendered on October 19, 2021

---

**On brief**: [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued**: *Sheryl L. Prichard*.

**On brief**: *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued**: *George M. Schumann*.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Defendant-appellant, Sterling Robinson, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of trafficking in cocaine, a felony of the first degree. For the reasons which follow, we affirm.

{¶ 2} By indictment filed October 30, 2018, plaintiff-appellee, State of Ohio, charged appellant with two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(2). The charges arose from incidents which occurred on February 9, and February 21, 2018, respectively.

{¶ 3} As part of an investigation into individuals believed to be buying and selling drugs in Columbus, Ohio, detectives in the Columbus Police Department's ("CPD") narcotics bureau placed a GPS tracking device on appellant's vehicle. On February 8, 2018, the GPS tracking device indicated appellant's vehicle was traveling south out of Columbus, Ohio. The tracking device demonstrated appellant's vehicle drove through the night to a location near McLeansville, North Carolina, stopped for an hour or less, and then began returning toward Ohio. Detective John Whitacre, the lead detective on the investigation, observed appellant's vehicle when it stopped at a KFC restaurant near Logan, Ohio on February 9, 2018. Whitacre saw appellant with another man in the KFC parking lot, observed the two men get into their respective vehicles, and watched as the two vehicles appeared to follow each other on the highway. CPD detectives then asked local law enforcement to initiate traffic stops on the vehicles. During the traffic stops, officers discovered 0.59 grams of heroin and 685.23 grams of cocaine in the vehicle driven by an individual named Todd Seiber but did not discover any cocaine or heroin in appellant's vehicle.

{¶ 4} On February 20, 2018, the GPS tracking device indicated appellant's vehicle was traveling west out of Columbus, Ohio. CPD detectives began conducting physical surveillance on the vehicle as it traveled on Interstate 70 West, and observed appellant exit the vehicle when he stopped for gas. When appellant stopped at a hotel in Bloomington, Illinois, CPD detectives asked local law enforcement to take over surveillance.

{¶ 5} Officer Chad Dumonceaux, a special agent of the Illinois State Police, met CPD detectives outside the hotel in Bloomington. After receiving information regarding the investigation, Dumonceaux began observing appellant's movements. Dumonceaux saw appellant come in and out of his hotel room during the evening of February 20, 2018. The following morning, appellant drove from the hotel to a mass transit hub located in Normal, Illinois, the town adjacent to Bloomington. After returning to the hotel, appellant eventually left the hotel and drove to the parking lot of a nearby Walmart. Officers then observed appellant drive to a gas station, go in, and come out "carrying snacks." (Tr. at 504.) Appellant returned to the Walmart parking lot and spent the next couple of hours "chang[ing] parking spaces" and getting "in and out of his car." (Tr. at 505.) Dumonceaux observed appellant get out of his car, retrieve "two plastic bags" from the rear of his vehicle,

and bring "those back to the driver's seat." (Tr. at 505.)  Shortly thereafter, appellant exited his vehicle and walked into the Walmart. Dumonceaux saw appellant "carrying a black backpack" as he walked into Walmart. (Tr. at 506.)

{¶ 6}   Appellant eventually exited Walmart and took a taxi to Normal, Illinois. Dumonceaux observed appellant exit the taxi, walk around the town of Normal, and stop in a restaurant to eat. Dumonceaux then observed appellant walk to the bus terminal portion of the mass transit hub. After sitting in the terminal for a while, Dumonceaux saw appellant walk out the terminal doors toward the buses. Dumonceaux stated that appellant "maintained possession of the black backpack from the time he exited the taxi until the time" he exited the bus terminal in Normal. (Tr. at 508-09.)  When Dumonceaux walked out the terminal doors, he saw appellant seated on a Trailways passenger bus.

{¶ 7}   Whitacre determined which bus appellant would likely be on when he arrived in Columbus, Ohio, and asked CPD Special Weapons and Tactics ("SWAT") Team for their assistance at the bus station. Officer Tim Halbakken, a member of the CPD SWAT Team, was present at the Columbus bus station when the bus in question arrived.  Halbakken explained he had been instructed "to watch for someone that might have a package, and may -- once they realize it's the police, may try to separate from the package." (Tr. at 529-30.) As the bus pulled in, Halbakken was "watch[ing] what's happening in the windows" and "key[ed] in on" a person that matched the description of the subject of the investigation. (Tr. at 531.)  Halbakken observed the person "separate[] himself from a bag * * *.  He took the bag and put it in the [empty] seat in front of himself, and he was looking around." (Tr. at 531.)  Halbakken "made a mental note" of the person and the seat where the person set the bag.  (Tr. at 531-32.)  After the passengers departed the bus, Halbakken went onto the bus and located the bag. Halbakken identified the bag to the detectives present on the scene.

{¶ 8}   CPD Narcotics Bureau Detective Jeremy Ehrenborg observed appellant depart the bus in Columbus. Ehrenborg noted appellant was not carrying any luggage when he departed the bus. A SWAT officer directed Ehrenborg to "a black bag that was sitting there" on the bus. (Tr. at 589.)  Ehrenborg took the black bag off the bus, set it on the ground, and ran a canine over the bag. The canine alerted to the black bag. Ehrenborg then unzipped the black bag and discovered a brick-shaped object wrapped in aluminum foil inside the bag.

{¶ 9}   Whitacre stood inside the bus station in Columbus and observed appellant as he departed the bus. Whitacre described how appellant came into the bus station and kept "look[ing] to see what was going on" outside with the bus. (Tr. at 427.) Whitacre stated that appellant "seemed very nervous." (Tr. at 427.) When Ehrenborg brought the black bag off the bus, Whitacre observed appellant "intently looking at what" the officers were doing with the black bag. (Tr. at 428.)  As soon as Ehrenborg opened the black bag, appellant left the bus station. Appellant walked from the bus station to a bar and eventually took a taxi away from the area.

{¶ 10}  Testing later revealed that the brick-shaped object from the black backpack contained 1,006.87 grams of cocaine. A bag of Doritos, a bag of cheese curls, a bag of Planters peanuts, a bottle of Ice Mountain water, a Hershey bar, a travel pillow, and a grey jacket were also found inside the black backpack.

{¶ 11}  On August 5, 2019, a five-day jury trial commenced. When the jury entered the courtroom for voir dire proceedings, appellant exclaimed that he was "not a defendant in this case" and that he did "not consent to these proceedings." (Tr. at 52-53.) Appellant voluntarily remained absent from the courtroom throughout the remainder of the trial, but was able to see and hear the trial via a live video feed.

{¶ 12}  The jury returned verdicts finding appellant not guilty of trafficking in cocaine as charged in Count 1, regarding the February 9, 2018 incident, but guilty of trafficking in cocaine as charged in Count 2, regarding the February 21, 2018 incident. The court sentenced appellant to a prison term of 11 years and ordered appellant to pay a $10,000 fine.

{¶ 13}  Appellant appeals, assigning the following two errors for our review:

> [I.] The verdict of guilt as to drug trafficking is not supported by the sufficiency of the evidence.
>
> [II.] The verdict of guilt as to drug trafficking is against the manifest weight of the evidence.

{¶ 14}  Appellant's assignments of error assert that his conviction for trafficking in cocaine was not supported by sufficient evidence or the manifest weight of the evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are

quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 15} Sufficiency of the evidence is a legal standard that tests whether the evidence is adequate to sustain a verdict as a matter of law. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11; *Thompkins* at 386. In considering a claim of insufficient evidence, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "As a result, when we review the sufficiency of the evidence, we do not, on appeal, reweigh the credibility of the witnesses." *State v. M.L.D.*, 10th Dist. No. 15AP-614, 2016-Ohio-1238, ¶ 45, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 16} The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins* at 387. When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* "The power to reverse on manifest-weight grounds should only be used in exceptional circumstances when 'the evidence weighs heavily against the conviction.' " *State v. Phillips*, 10th Dist. No. 14AP-79, 2014-Ohio-5162, ¶ 125, quoting *Thompkins* at 387.

{¶ 17} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, "we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶ 18} Appellant's first assignment of error asserts his conviction was not supported by sufficient evidence, as the state failed to establish that he knowingly possessed the cocaine discovered inside the black backpack. Appellant was convicted of violating R.C. 2925.03(A)(2), which provides that no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance * * * when the offender knows or has reasonable cause to believe that the controlled substance * * * is intended for sale or resale by the offender or another person." "In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc. the offender must 'hav[e] control over' it." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 30, quoting R.C. 2925.01(K). Thus, trafficking in a controlled substance under R.C. 2925.03(A)(2) requires possession of the controlled substance. *Id.* at paragraph two of the syllabus; *State v. Floyd*, 7th Dist. No. 18 MA 0106, 2019-Ohio-4878, ¶ 21 (stating that R.C. 2925.03(A)(2) requires "possession of the controlled substance, either constructive or actual").

{¶ 19} Appellant contends the state failed to introduce evidence demonstrating he was the individual law enforcement saw with the black backpack. Appellant asserts that, while Halbakken and Dumonceaux testified they saw the "suspect" with a black backpack, neither identified appellant as the suspect they saw. (Appellant's Brief at 12.)

{¶ 20} Whitacre was present in the courtroom when appellant made statements to the jury at the start of voir dire. Whitacre informed the jury that "[appellant], the person [he was] surveilling," was the individual who was present in the courtroom at the start of voir dire. (Tr. at 377.) Detectives Whitacre and Ehrenborg stated they observed appellant as he traveled from Ohio to Illinois on February 20, 2018. When CPD detectives turned their surveillance over to the Illinois officers, they "showed [the Illinois officers] the target" of their investigation. (Tr. at 584.) Dumonceaux stated that CPD detectives provided him with the suspect's "vehicle information and the individual's name; and a photograph of the individual" and "point[ed]" out "where [the suspect] was." (Tr. at 499.) Dumonceaux affirmed the person he observed exit the taxi in Normal, Illinois was the person CPD detectives had asked him to surveil. Such evidence permitted the trier of fact to conclude the suspect Dumonceaux observed carrying the black backpack was appellant.

{¶ 21} Prior to the bus in question arriving in Columbus, Whitacre spoke with Officer Rob Vass of the CPD SWAT Team and "told him what [Detective Whitacre] believed would be here in Columbus." (Tr. at 424.) Officer Vass "filled [Officer Halbakken] in the most" regarding the SWAT Team's objectives at the bus station. (Tr. at 527.) Halbakken stated he was provided "a photo" and "some description" of the person he was to be watching for when the bus arrived. (Tr. at 530.) Halbakken identified an individual on the bus who matched the description provided. Detectives Whitacre and Ehrenborg observed appellant depart the bus in question. Such evidence permitted a rational trier of fact to conclude that the person Halbakken observed on the bus was appellant.

{¶ 22} Appellant further asserts the evidence was insufficient to demonstrate his possession of the cocaine because "[n]othing in the bag was identified as belonging to [appellant]." (Appellant's Brief at 13.) Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession of a controlled substance may be actual or constructive. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 27 (10th Dist.), citing *State v. Saunders*, 10th Dist. No. 06AP-1234, 2007-Ohio-4450, ¶ 10. A person has actual possession of an item when it is within his immediate physical control. *Id.*, citing *Saunders*. Constructive possession exists when a person knowingly exercises dominion and control over an object, even though the object may not be within the person's immediate physical possession. *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus.

{¶ 23} "Circumstantial evidence alone may be sufficient to support the element of constructive possession." *Id.* at ¶ 28, citing *Jenks* at 272-73. Thus, "the surrounding facts and circumstances, including the defendant's actions, constitute evidence from which the trier of fact can infer whether the defendant had constructive possession over the subject drugs." *State v. Hurse*, 10th Dist. No. 14AP-687, 2015-Ohio-2656, ¶ 21, citing *State v. Stanley*, 10th Dist. No. 06AP-323, 2007-Ohio-2786. *See Pilgrim* at ¶ 29. The discovery of "readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs." *State v. Burnett*, 10th Dist. No. 02AP-863, 2003-Ohio-1787, ¶ 20.

{¶ 24} Officers observed appellant carry a black backpack into Walmart in Bloomington, Illinois, around the town of Normal, Illinois, and into the bus terminal in Normal. When the bus believed to be carrying appellant arrived in Columbus, Ohio, Halbakken observed the subject of the investigation set a bag on the empty seat in front of him on the bus. Detectives Whitacre and Ehrenborg observed appellant depart from the bus without any luggage. Whitacre described how appellant appeared very nervous in the Columbus bus station, was intently watching what officers were doing with the black bag, and how appellant left the bus station as soon as Ehrenborg opened the bag. The bag Halbakken saw appellant set on the empty seat in front of him was a black backpack which contained a kilogram of cocaine. The Illinois officers observed appellant purchase snacks at a gas station in Bloomington, and various snack items were also discovered in the black backpack.

{¶ 25} Thus, the surrounding facts and circumstances permitted a rational trier of fact to conclude that appellant exercised dominion and control over the cocaine discovered inside the black backpack. Appellant possessed a black backpack in Illinois, and Halbakken's testimony demonstrated that appellant tried to separate himself from a black backpack at the sight of law enforcement when he arrived in Columbus, Ohio. Such evidence, along with appellant's nervous behavior in the Columbus bus station and prompt exit when officers opened the backpack, permitted a rational trier of fact to conclude that appellant constructively possessed the kilogram of cocaine. *See State v. Bland*, 10th Dist. No. 10AP-327, 2010-Ohio-5874, ¶ 18 (finding defendant's "nervous behavior" was circumstantial evidence demonstrating defendant's possession of the cocaine); *State v. Fultz*, 12th Dist. No. CA2015-06-103, 2016-Ohio-1486, ¶ 23 (stating that "appellant's behavior and nervousness during the search show[ed] that she knowingly possessed the drugs and drug paraphernalia found in the bedroom"); *State v. Norman*, 10th Dist. No. 03AP-298, 2003-Ohio-7038, ¶ 32 (finding evidence demonstrated defendant's constructive possession of the cocaine, as the cocaine was discovered in a backpack located "in a bedroom then being solely occupied by [defendant]," the backpack contained clothing worn by defendant, and the defendant "immediately fled the premises upon being informed that police were nearby").

{¶ 26} Viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to establish the elements of trafficking in cocaine beyond a reasonable doubt. Appellant's first assignment of error is overruled.

{¶ 27} Appellant's second assignment of error asserts his conviction for trafficking in cocaine was against the manifest weight of the evidence. Appellant contends the weight of the evidence did not support his conviction because there was no evidence demonstrating whether the backpack seized in Columbus was the same backpack Dumonceaux saw in Illinois, Dumonceaux did not see appellant place drugs into the backpack in Illinois, and because the state did not present DNA or surveillance video evidence to connect appellant to the backpack or the cocaine. Thus, appellant appears to assert his conviction is against the weight of the evidence because circumstantial, rather than direct, evidence established the elements of trafficking in cocaine.

{¶ 28} However, circumstantial evidence has the same probative value as direct evidence. *Jenks* at 272. "A criminal conviction may be based entirely, or in part, on circumstantial evidence." *State v. Hawkins*, 10th Dist. No. 19AP-546, 2021-Ohio-2899, ¶ 43, citing *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). Circumstantial evidence is the " 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.' " *State v. Griesheimer*, 10th Dist. No. 05AP-1039, 2007-Ohio-837, ¶ 26, quoting *State v. Bentz*, 2 Ohio App.3d 352, 355 (10th Dist.1981), fn.6. " 'The weight given to an inference is a question for the trier of fact and will not be disturbed unless it is such that reasonable minds could not reach such a conclusion.' " *State v. Knight*, 10th Dist. No. 16AP-288, 2016-Ohio-8134, ¶ 26, quoting *State v. Sanders*, 6th Dist. No. L-96-379 (Feb. 13, 1998). Furthermore, "the state is not obligated to produce DNA evidence linking a defendant to the crime to secure a conviction." *State v. Poindexter*, 10th Dist. No. 19AP-394, 2021-Ohio-1499, ¶ 22, citing *State v. Martin*, 1st Dist. No. C-150054, 2016-Ohio-802, ¶ 22. "Lack of corroborating evidence, by itself, does not undermine a witness's credibility." *State v. Lawless*, 9th Dist. No. 16AP0025, 2018-Ohio-444, ¶ 34. *See also State v. Humberto*, 196 Ohio App.3d 230, 2011-Ohio-3080, ¶ 10 (10th Dist.); *State v. Shirley*, 8th Dist. No. 107449, 2019-Ohio-1888, ¶ 33.

{¶ 29} The jury could reasonably infer from the evidence presented that the black backpack Dumonceaux observed appellant carry in Illinois was the same black backpack appellant tried to distance himself from when he arrived in Columbus. As officers discovered a kilogram of cocaine in the black backpack, the jury could reasonably infer appellant had transported the cocaine into Columbus in the black backpack. Considering the circumstantial evidence demonstrating the elements of trafficking in cocaine, the lack of DNA or surveillance video evidence was immaterial in the present case.

{¶ 30} Appellant also contends the weight of the evidence did not support his conviction because evidence in the record indicated that he had placed the black backpack in the bus's cargo compartment in Illinois. A search warrant affidavit admitted into evidence stated that "[p]rior to boarding the bus in Normal Illinois [appellant] placed a black backpack at the storage space under the bus." (Def.'s Ex X.) However, the affidavit also stated the bus appellant boarded in Normal, Illinois "would have a stop in Indianapolis, Indiana with a connecting Greyhound bus bound for Columbus, Ohio." (Def.'s Ex X.) Whitacre also noted the bus appellant boarded in Normal, Illinois "had a stop in Indianapolis." (Tr. at 424.)   Thus, the evidence demonstrated that appellant had the opportunity to retrieve the black backpack from the bus's storage compartment when his bus stopped in Indianapolis.

{¶ 31} Appellant further asserts his conviction was against the weight of the evidence because the jury was not able to compare a photograph of the suspect carrying the black backpack in Illinois with the actual black backpack seized by police in Columbus. The state published State's Exhibit D8 to the jury during trial, and Dumonceaux affirmed that State's Exhibit D8 was a photograph of the individual he was surveilling in Illinois carrying the black backpack. The court did not admit State's Exhibit D8 into evidence. During their deliberations, the jury asked if they could see State's Exhibit D8. Appellant asserts the jury's question regarding State's Exhibit D8 demonstrates the absence of the photograph "was an issue for the jury." (Appellant's Brief at 15.)

{¶ 32} The jury's question regarding State's Exhibit D8 is not relevant to this court's manifest weight of the evidence analysis. *See State v. Wood*, 10th Dist. No. 19AP-649, 2020-Ohio-4895, ¶ 39 (stating the "jury's deliberations are simply not relevant to an appellate court's manifest weight analysis"). This court "will not engage in speculation as to

why the jury asked certain questions for purposes of its deliberations." *State v. Holloman*, 10th Dist. No. 06AP-01, 2007-Ohio-840, ¶ 25; *State v. Ford*, 10th Dist. No. 07AP-803, 2008-Ohio-4373, ¶ 64. Even without State's Exhibit D8, the jury could infer from the evidence presented that the black backpack appellant carried in Illinois was the same black backpack appellant possessed when he arrived in Ohio.

{¶ 33} Appellant finally contends that Halbakken's testimony was unworthy of belief, as Halbakken did not identify appellant as the suspect he saw on the bus, no other witness corroborated Halbakken's testimony, and because Halbakken mistakenly testified that appellant was detained at the bus station. As discussed in our resolution of appellant's first assignment of error, the evidence presented allowed the jury to reasonably infer that the individual Halbakken saw on the bus was appellant. The absence of corroborating testimony did not render Halbakken's testimony unworthy of belief, as "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 34} While Halbakken testified that other officers on the scene "grabbed [appellant]" when he departed the bus, Whitacre explained that appellant was not detained at the bus station. (Tr. at 533.)  The jury "may take note of inconsistencies at trial and resolve them accordingly, believing all, part, or none of a witness's testimony." *State v. R.L.R.*, 10th Dist. No. 18AP-971, 2020-Ohio-4577, ¶ 24, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Thus, the jury could reasonably find that Halbakken was mistaken in his testimony about the suspect being detained at the station, but not mistaken about seeing the suspect separate himself from a bag on the bus. Halbakken's statement indicating that appellant was apprehended at the bus station did not render all parts of Halbakken's testimony unworthy of belief.

{¶ 35} The jury had the opportunity to hear the testimony of all the witnesses who appeared before it and evaluate their credibility. After reviewing the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice in arriving at its verdict. To the contrary, we find the weight of the evidence supports appellant's conviction for trafficking in cocaine. Appellant's second assignment of error is overruled.

{¶ 36} Having overruled appellant's two assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____