[Cite as *State v. Dixon*, 2018-Ohio-4841.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-108 |
| v. | : | (C.P.C. No. 97CR-781) |
| Marvelle E. Dixon, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 6, 2018

**On brief:** *Marvelle E. Dixon*, pro se. **Argued:** *Kort Gatterdam.*

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Sheryl L. Prichard*, for appellant. **Argued:** *Sheryl L. Prichard.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Marvelle E. Dixon, appeals from the January 25, 2018 judgment of the Franklin County Court of Common Pleas denying his motion for a new trial. For the following reasons, we affirm.

{¶ 2} In 1998, a jury found appellant guilty of aggravated murder, in violation of R.C. 2903.01, with a firearm specification and guilty of felonious assault, in violation of R.C. 2903.11, with a firearm specification. He is serving a sentence of life in prison with no parole eligibility for 20 years on the aggravated murder count, 8 to 15 years on the felonious assault counts, and 3 years for the firearm specification. The trial court ordered the sentences to be served consecutively.

{¶ 3} Appellant was convicted for killing Douglas Harvey and shooting Ervin Nixon on July 19, 1995. Nixon and Harvey were following their friends, Joe Robinson and Chris Veney, as they drove to visit Robinson's girlfriend. Nixon, who was driving with Harvey in the front passenger seat, stopped behind Robinson and Veney at a red light. A blue Chevrolet pulled up along the passenger side of Nixon's car. The front seat passenger in the Chevrolet fired several shots toward Nixon and Harvey. Robinson sped through the intersection, and Nixon, who was only slightly wounded, fled on foot. Harvey received two fatal gunshots to the head. Nixon, Veney, and Robinson returned to the scene, but none of them identified the shooter at that time. Almost one year later, Nixon came forward and identified appellant as the gunman. Three days later, detectives talked with Robinson. He also named appellant as the shooter.

{¶ 4} Appellant was indicted for aggravated murder and felonious assault. Both counts also contained a firearm specification. The case proceeded to trial in January 1998 but ended in a mistrial. A second trial occurred in February 1998, but the jury was unable to reach a verdict. Appellant was tried for a third time in April 1998. At that trial, the state presented the video deposition of Frank Gable. He testified that on July 19, 1995, Earl Wilson and appellant came to his sister's house and asked to see his niece, who was there with her boyfriend. Wilson and appellant ended up leaving in a blue Oldsmobile belonging to the boyfriend of Gable's niece. About 10 to 15 minutes later, Gable saw the blue Oldsmobile following another car down the street. When the car stopped at a red light, Gable heard a lot of gunshots. It was too far away for Gable to see who the shooter was. The state also called Robinson to testify against appellant, but not Nixon. Between the second and third trial, the state became aware that Nixon had written a letter that claimed that Jamaicans were responsible for the shooting. The defense, however, called Nixon to testify. It attempted to impeach Nixon's testimony with the letter but Nixon stated that he lied in the letter. Nixon maintained that appellant was the shooter.

{¶ 5} After appellant was convicted, he appealed the judgment against him to this court. We affirmed that judgment. *See State v. Dixon*, 10th Dist. No. 98AP-626 (Dec. 5, 2000).

{¶ 6} In the years that followed, appellant filed multiple postconviction motions. The present appeal concerns his motion for new trial that he filed August 10, 2016. The

state opposed the motion. It noted that appellant had failed to file a motion for leave to file a motion for new trial as required by Crim.R. 33(B) because the motion was filed more than 120 days after the jury's verdict. Appellant filed a motion for leave on November 9, 2016. The trial court granted the motion for leave, deemed the motion for new trial filed, and set a hearing on the motion.

{¶ 7} At the hearing, appellant's uncle testified that Nixon contacted him in April 2016. According to the uncle, Nixon indicated that he had made a terrible mistake and that he wanted to come clean. The uncle facilitated a three-way call with Nixon and appellant. He then met with appellant's attorney and Nixon.

{¶ 8} Nixon testified that he falsely accused appellant of shooting Harvey. He stated that he knew who appellant was and that appellant belonged to the Bloods. Nixon recounted that on the day of the shooting the people in the other car were Bloods. They were wearing red rags on their faces and Loki sunglasses, but he could not identify them. Eventually, Nixon and appellant were both incarcerated on different charges at Jackson Pike workhouse. Nixon explained that one day he was waiting for a correction officer to open his cell door, and appellant was standing close. Appellant apparently said something insulting about Nixon's mother. Nixon said it was like a bomb going off, and it caused him to identify appellant as the shooter. Nixon denied having any contact with Robinson, who was incarcerated at Ross Correctional Institution, but that information spreads quickly in prison. He also testified that the prosecutor did not make him any promises but said that the prosecutor indicated that he would put in a good word with Nixon's judge. After appellant was convicted, Nixon was granted shock probation.

{¶ 9} The trial court denied the motion for new trial. Although the trial court believed that Nixon's recantation appeared genuine and credible, it found that appellant's newly discovered evidence did not establish a strong probability that a different verdict would result. The state had presented the testimony of Robinson at trial, and he had identified appellant as the shooter. In addition, Gable placed appellant in a vehicle that was consistent with the description of the car involved in the shooting. The trial court also found that appellant was not a credible witness at his trial.

{¶ 10} Appellant appeals and assigns the following errors:

[1.] Trial court committed a *abuse of discretion* and reversible error when it based its decision on **State v. Burke** and determined that Appellant evidence did not wanted a new trial.

[2.] The Trial erred and *abused its Discretion* and violated **Due Process** under the Fourteenth Amendment when it denied appellant's Motion for New Trial after *testimony from the State {Prosecutor} admitting that favors had been granted* the States Witness for testimony in a Major Murder case.

[3.] The Trial court erred in the *abuse of its discretion* when the **cumulative Error** deprived Appellant of the Constitutional right to a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal.

[4.] The trial court *abused its discretion* when it failed to grant defendant a new trial based on **counsel's affidavit** that he would have prepared a different defense had he known of the newly discovered evidence.

[5.] Trial court *Abused its discretion* when the trial court held, there was not a strong probability that defendant would have been acquitted if a new trial were granted.

(Sic passim; emphasis sic.)

{¶ 11} Because appellant's five assignments of error address whether the trial court properly denied his motion for a new trial, we address them together.

{¶ 12} Appellant filed his motion for new trial pursuant to Crim.R. 33(A)(6), which provides that a new trial may be granted "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Such a motion is to be filed within 120 days after the verdict was rendered. Crim.R. 33(B). If a defendant misses filing within the 120-day period, Crim.R. 33 mandates a two-step procedure. *State v. Graggs*, 10th Dist. No. 16AP-611, 2017-Ohio-4454, ¶ 8. First, the defendant must file a motion for leave to file a delayed motion for new trial. To obtain leave to file a motion for new trial based on newly discovered evidence, a defendant must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from discovering the evidence within the 120 days. *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19.

{¶ 13} Second, if the trial court grants the motion for leave, the defendant must file his actual motion for a new trial.  In that motion, the defendant must  show that the newly discovered evidence upon which the motion is based: (1) discloses a strong probability that it will change the result if a new trial is granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence.  *State v. Davis*, 10th Dist. No. 03AP-1200, 2004-Ohio-6065, ¶ 7; *State v. Petro*, 148 Ohio St. 505 (1947), paragraph one of the syllabus.

{¶ 14} New trials are not to be granted lightly. *State v. Townsend*, 10th Dist. No. 08AP-371, 2008-Ohio-6518, ¶ 12. " 'A more searching inquiry is required' if the new trial is granted than if denied * * * because of 'the concern that a judge's nullification of the jury's verdict may encroach on the jury's important fact-finding function.' " *State v. Luckett*, 144 Ohio App.3d 648, 655 (8th Dist.2001), quoting *Tri Cty. Industries, Inc. v. Dist. of Columbia*, 200 F.3d 836, 840 (D.C.Cir.2000), citing *Langevine v. Dist. of Columbia*, 106 F.3d 1018, 1023 (D.C.Cir.1997).

{¶ 15} Because appellant filed his motion for a new trial based on newly discovered evidence 20 years after the jury's verdict, he sought leave from the trial court to file a delayed motion.  Over the state's opposition, the trial court found that appellant was unavoidably prevented from the discovery of Nixon's affidavit recanting his trial testimony and that the motion for leave was filed within a reasonable time.  Thus, the trial court went on to address the merits of the motion for new trial.

{¶ 16} Our review of a trial court's decision resolving a motion for new trial is limited to whether the trial court abused its discretion. *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993).  An abuse of discretion is more than an error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary, or unconscionable. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, ¶ 91.  An appellate court may not determine that a trial court abused its discretion simply because the appellate court might not have reached the same conclusion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14.

{¶ 17} In this case, the newly discovered evidence consisted of Nixon's recantation of his identification of appellant as the shooter.  "Recantation by a significant witness does

not, as a matter of law, entitle the defendant to a new trial." *State v. Woodward*, 10th Dist. No. 08AP-1015, 2009-Ohio-4213, ¶ 20, citing *State v. Walker*, 101 Ohio App.3d 433, 435 (10th Dist.1995). Instead, a trial court must determine "(1) which of the contradictory testimony offered by the recanting witness is credible and true, and if the recanted testimony is to believed; (2) would the evidence materially affect the outcome of the trial?" *Toledo v. Easterling*, 26 Ohio App.3d 59, 62 (6th Dist.1985). Newly discovered evidence based on recanted testimony should be viewed with the utmost suspicion. *Woodward* at ¶ 21.

{¶ 18} The trial court found Nixon's recantation was credible. Nonetheless, the trial court determined that appellant failed to establish that there was a strong probability the newly discovered evidence would change the result of the trial. This requirement involves consideration of not only the newly discovered evidence but also consideration of the evidence adduced at trial. *State v. Gillispie*, 2d Dist. No. 24456, 2012-Ohio-1656, ¶ 35.

> In general, the stronger the evidence of guilt adduced at trial, the stronger the newly discovered evidence would have to be in order to produce a strong probability of a different result. Conversely, the weaker the evidence of guilt at trial, the less compelling the newly discovered evidence would have to be in order to produce a strong probability of a different result. In view of the beyond-a-reasonable-doubt burden of proof, newly discovered evidence need not conclusively establish a defendant's innocence in order to create a strong probability that a jury in a new trial would find reasonable doubt.

*Id.*

{¶ 19} Appellant argues that the trial court abused its discretion in denying the motion for new trial. He first takes issue with the trial court citing *State v. Burke*, 10th Dist. No. 06AP-686, 2007-Ohio-1810. The trial court used *Burke* to set forth the law governing its decision on appellant's motion for new trial. *Burke* is still good law so the trial court did not err in citing it. Appellant argues that the trial court's decision was unreasonable because the state used perjured testimony, the prosecutor admitted to granting favors to state witnesses for testimony, and his attorney testified that he would have prepared a different defense. He contends that the trial court could not predict what a jury would do with the newly discovered evidence so the trial court should have granted him a new trial.

Appellant also seems to argue that Robinson was only following Nixon's lead so that now that Nixon has recanted, the trial court did not know what Robinson would testify to.

{¶ 20} Based on our review of the record, we cannot say that Nixon's recantation would have materially affected the outcome of the trial or that it discloses a strong probability that it would change the result if a new trial were to be granted. Appellant misstates the record in his argument. Nixon was called by the defense in appellant's third trial that resulted in his conviction. Nixon testified at that trial that the prosecutor had said he would talk with the judge about Nixon's cooperation. The jury that convicted appellant was already aware that Nixon had given differing statements about knowing who the shooter was and that he was hoping for leniency in his own criminal case.

{¶ 21} Appellant's former attorney also did not testify at the new trial hearing that he would have prepared a different defense. Appellant's defense at trial was he was that not at the scene and that he was not the shooter. Instead, appellant's former attorney explained that he called Nixon to the stand at the third trial because he thought Nixon would testify consistent with the letter that he wrote blaming Jamaicans for the shooting. The attorney further opined that, if Nixon had testified consistent with his affidavit in support of the motion for new trial, then the jury would have found appellant not guilty. But, this appears to be based on his belief that only Nixon positively identified appellant as the shooter. To the contrary, at both the second and third trials, Robinson testified that he saw appellant shooting at Nixon's vehicle.

{¶ 22} Although the trial court found Nixon credible, this does not automatically entitle appellant to a new trial. The newly discovered evidence is weighed against the evidence at trial to determine if there is a strong probability that it will change the result. Nixon's recantation does not conclusively show that appellant was not the shooter. At the hearing on the motion, Nixon continued to maintain that appellant belonged to the Bloods. Nixon testified that the people in the car that pulled up next to his vehicle were Bloods and that they were wearing red rags and sunglasses. He stated that he could not identify them. Not being able to identify the shooter does equate to a finding that appellant was not the shooter. It also does not impact Robinson's identification of appellant as the shooter or Gable's testimony that placed appellant in the vehicle minutes before the shooting. Nixon and appellant speculate that Robinson was simply following Nixon's lead, but there is no

evidence to support that. Nixon testified that he had no contact with Robinson after Nixon was incarcerated. There was testimony that Nixon and Robinson were incarcerated in separate facilities in different counties and that they gave statements within days of each other.

{¶ 23} In light of this evidence, we cannot conclude that the trial court abused its discretion when it found that, despite the credible recantation by Nixon, the newly discovered evidence did not establish a strong probability that a different verdict would result. Accordingly, we overrule appellant's assignments of error, and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BRUNNER, JJ., concur.

———————————