[Cite as *State v. Dixon*, 2026-Ohio-570.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Marvell Dixon, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 25AP-163 (C.P.C. No. 22CV-5888) |
| State of Ohio, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on February 19, 2026

**On brief:** *Carpenter Lipps, LLP*, *Kort Gatterdam*, and *Michael Rogers*, for appellant. **Argued:** *Michael Rogers*.

**On brief:** *Dave Yost*, Attorney General, *Andrew Gatti*, *Salvatore P. Messina*, and *Daniel H. Huston*, for appellee. **Argued:** *Andrew Gatti*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Marvell Dixon, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion for summary judgment and granting the motion for summary judgment filed by defendant-appellee, State of Ohio , on Dixon's complaint to be declared a wrongfully imprisoned individual. For the reasons that follow, we affirm in part and reverse in part.

I.  **Facts and Procedural History**

{¶ 2} On August 24, 2022, Dixon filed a complaint alleging he was a wrongfully imprisoned individual pursuant to R.C. 2743.48. A jury previously found Dixon guilty of

one count of aggravated murder and one count of felonious assault, both with firearm specifications, in 1998. The court in the criminal case sentenced Dixon to a term of life in prison with no parole eligibility for 20 years on the aggravated murder count; a term of 8 to 15 years on the felonious assault count; and a term of 3 years on each of the firearm specifications, all to be served consecutively.

{¶ 3} The events underlying Dixon's 1998 conviction concerned a July 19, 1995 shooting incident. On that day, Ervin Nixon, Douglas Harvey, Joe Robinson, and Chris Veney were driving through Columbus, Ohio to visit Robinson's girlfriend on the east side of town. Robinson and Veney drove in one car, while Nixon and Harvey followed behind in another car. The vehicles were traveling south on Ohio Avenue toward Livingston Avenue and came to a stop at a red light at Livingston Avenue. When the cars stopped, a blue Celebrity pulled up alongside Nixon's vehicle and began shooting toward Nixon and Harvey. When the shooting began Robinson sped through the intersection away from the gunfire. A bullet grazed Nixon's back, but Nixon was able to exit his vehicle and flee the scene on foot. Harvey received two fatal gunshot wounds to the head.

{¶ 4} Nixon, Veney, and Robinson spoke to police on the day of the shooting, but none of them identified the shooter. Over one year later, when Nixon was serving a prison term on an unrelated charge, Nixon contacted police and told them he could identify the shooter. On January 6, 1997, Nixon identified Dixon as the shooter. On January 9, 1997, officers spoke to Robinson who was also serving a prison sentence on an unrelated charge, and Robinson identified Dixon as the shooter.

{¶ 5} The state initially tried Dixon in January 1998, but the trial ended in a mistrial. The state tried Dixon again in February 1998, but the trial ended in a hung jury. The state tried Dixon for a third time in April 1998. At the third trial, Robinson testified for the state and identified Dixon as the individual who shot Harvey and Nixon. Veney testified for the state but indicated he did not see the shooter during the incident. The state also presented the videotaped deposition of Frank Gable at trial.[1] Gable testified that, approximately 10 to 15 minutes before the shooting, he saw Dixon in the blue vehicle that was later involved in the shooting. The defense called Nixon to testify and questioned him

---

[1] The court permitted the state to present Gable's deposition at trial because Gable was ill and battling cancer at the time.

about a letter he wrote claiming Jamaicans were responsible for the shooting. However, Nixon stated he lied in the letter and that Dixon was the shooter. This court affirmed Dixon's conviction and sentence on direct appeal in *State v. Dixon*, 2000 Ohio App. LEXIS 5649 (10th Dist. Dec. 5, 2000).

{¶ 6} On August 10, 2016, Dixon moved for a new trial in his criminal case. Dixon supported his motion with an affidavit from Nixon recanting his trial testimony. At a December 11, 2017 hearing on the motion for a new trial, Nixon confirmed he testified falsely at Dixon's 1998 trial. Nixon explained that, on the day of the shooting, he knew the individuals in the opposing car were members of the Bloods gang, noting they had on "red rags" and "Lokes . . . sunglasses," but he explained he did not know "like, who did it." (Dec. 11, 2017 Tr. at 40-41.) Nixon stated he decided to falsely accuse Dixon of the shooting following an incident that occurred when he and Dixon were both incarcerated at the Jackson Pike workhouse in 1996. During the incident, Dixon insulted Nixon's mother and Nixon decided to falsely identify Dixon as the shooter in retaliation.

{¶ 7} On January 25, 2018, Judge Jennifer French issued a decision denying Dixon's motion for a new trial. Although Judge French found Nixon's recantation "to be genuine and credible," she determined the recantation did not, on its own, present a strong probability that a different verdict would have resulted at trial. (Jan. 25, 2018 Decision at 6.) Judge French noted Robinson also identified Dixon as the shooter at the 1998 trial and that he had not recanted his trial testimony. This court affirmed Judge French's decision in *State v. Dixon*, 2018-Ohio-4841 (10th Dist.).

{¶ 8} The state charged Nixon with two counts of perjury based on his recanted testimony. On June 10, 2019, Nixon pled guilty to one count of perjury and the court entered a nolle prosequi on the remaining count. The court sentenced Nixon to a 9-month prison term on the perjury charge.

{¶ 9} On May 17, 2021, Dixon filed his second motion for a new trial. Dixon supported his second motion with affidavits from both Nixon and Robinson recanting their trial testimonies. Dixon noted that, with both recantations, the "State no longer ha[d] eyewitness testimony identifying Mr. Dixon as the shooter in this case." (Def.'s Mot. for New Trial at 9.)

{¶ 10} On March 23, 2022, Judge Karen Phipps granted Dixon's second motion for a new trial, vacated his convictions, and ordered that he be released from prison. On March 23, 2022, Robinson also pled guilty to one count of perjury. The court sentenced Robinson to a prison term, suspended the prison term for a term of PNC, found Robinson had satisfied all conditions of the PNC, and terminated the PNC in the sentencing entry.[2] Following Judge Phipps' decision granting Dixon's motion for a new trial, the state requested, and the court entered, a nolle prosequi for the indictment in Dixon's criminal case.

{¶ 11} On April 22, 2024, Dixon and the state both filed motions for summary judgment in Dixon's wrongful imprisonment case. In his motion, Dixon argued Nixon's and Robinson's recantations demonstrated he was a wrongfully imprisoned individual under R.C. 2743.48. Dixon acknowledged that courts generally "hesitate before accepting a recanting witness's new testimony," but claimed Nixon's and Robinson's recantations were inherently credible. (Pl.'s Mot. for Summ. Jgmt. at 12.) In its motion for summary judgment, the state claimed Dixon could not demonstrate he was actually innocent of the offenses. The state asserted that, because Nixon testified for the defense rather than the prosecution at the 1998 trial, Nixon's "recantation ha[d] little value" in the present wrongful imprisonment action. (Def.'s Mot. for Summ. Jgmt. at 13.) The state further asserted that "[e]ven if Robinson's recantation [was] to be believed, a finder of fact, using all the circumstantial evidence in the case, [could] conclude that [Dixon] was the person who committed the [shooting]." (Def.'s Mot. for Summ. Jgmt. at 14.)

{¶ 12} Dixon filed a memorandum contra the state's motion for summary judgment on May 20, 2024. Dixon acknowledged Nixon testified for the defense at the 1998 trial, but noted that even if "Nixon's testimony was irrelevant to securing Mr. Dixon's conviction in 1998, Nixon's recantation [was] crucial [to] proving Mr. Dixon's innocence in 2024." (Pl.'s Memo. Contra at 9.) The state filed a memorandum in opposition to Dixon's motion for summary judgment on May 22, 2024. The state noted that, while it "[did] not assert that

---

[2] See Harris v. United States, 204 F.3d 681, 682 (6th Cir. 2000), quoting United States v. Gay, 1999 U.S. App. LEXIS 31976, *6-7 (6th Cir. Nov. 24, 1999) (noting "Ohio courts use[d] 'PNC' as shorthand for 'provided no convictions'—a condition on which a sentence of imprisonment [was] suspended," and explaining that "a PNC sentence [was] the 'functional equivalent of unsupervised probation' ").

Nixon and Robinson's trial testimony was truthful," it believed Nixon's and Robinson's "prior trial testimony and their recantation [were] consistent on key points precluding a finding that summary judgment should be granted in [Dixon's] favor." (Def.'s Memo in Opp. at 5.)

{¶ 13} On January 15, 2025, the trial court issued a decision and entry granting the state's motion for summary judgment and denying Dixon's motion for summary judgment. The court acknowledged Nixon's and Robinson's recantations, but determined the recantations did not demonstrate "beyond a preponderance of the evidence that [Dixon] was not the shooter in the underlying criminal action." (Jan. 15, 2025 Decision at 4.)

## II. Assignment of Error

{¶ 14} Dixon appeals and assigns the following sole assignment of error for our review:

> THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S
> MOTION FOR SUMMARY JUDGMENT AND GRANTING
> DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

## III. Discussion

{¶ 15} Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson v. Petrosurance, Inc.*, 2010-Ohio-4505, ¶ 29; *Capella III, L.L.C. v. Wilcox*, 2010-Ohio-4746, ¶ 16 (10th Dist.). "[D]e novo appellate review means that the court of appeals independently reviews the record and affords no deference to the trial court's decision." (Internal quotations and citations omitted.) *Holt v. State*, 2010-Ohio-6529, ¶ 9 (10th Dist.).

{¶ 16} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making conclusory allegations. *Id*. Rather, the

moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id*. If the moving party satisfies its initial burden, summary judgment is appropriate unless the non-moving party responds, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id*.; *Hall v. Ohio State Univ. College of Humanities*, 2012-Ohio-5036, ¶ 12 (10th Dist.), citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist. 1991). Because summary judgment is a procedural device used to terminate litigation before trial, it must be awarded with caution and all doubts must be resolved in favor of the non-moving party. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 17} In 1986, the General Assembly enacted R.C. 2743.48 " 'to authorize civil actions against the state, for specified monetary amounts, in the Court of Claims by certain wrongfully imprisoned individuals.' " *Doss v. State*, 2012-Ohio-5678, ¶ 10, quoting 141 Ohio Laws, Part III, 5351. R.C. 2743.48 was designed to replace the former practice of compensating wrongfully imprisoned persons by ad hoc moral claims legislation. *Walden v. State*, 47 Ohio St.3d 47, 49 (1989). The statute provides a two-step process whereby a person claiming wrongful imprisonment may sue the state for damages. *State ex rel. Tubbs Jones v. Suster*, 1998-Ohio-275. "The first step is an action in the common pleas court seeking a preliminary factual determination of wrongful imprisonment; the second step is an action in the Court of Claims to recover money damages." *Doss* at ¶ 10, citing *Griffith v. Cleveland*, 2010-Ohio-4905, paragraph two of the syllabus.

{¶ 18} R.C. 2743.48(A) defines a "wrongfully imprisoned individual" as a person who satisfies the following five requirements:

> (1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony, felony, or misdemeanor.
>
> (2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony, felony, or misdemeanor.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal and all of the following apply:

(a) No criminal proceeding is pending against the individual for any act associated with that conviction.

(b) The prosecuting attorney in the case, within one year after the date of the vacating, dismissal, or reversal, has not sought any further appeal of right or upon leave of court, provided that this division does not limit or affect the seeking of any such appeal after the expiration of that one-year period as described in division (C)(3) of this section.

(c) The prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation, within one year after the date of the vacating, dismissal, or reversal, has not brought a criminal proceeding against the individual for any act associated with that conviction, provided that this division does not limit or affect the bringing of any such proceeding after the expiration of that one-year period as described in division (C)(3) of this section.

(5) Subsequent to sentencing or during or subsequent to imprisonment, an error in procedure was discovered that occurred prior to, during, or after sentencing, that involved a violation of the Brady Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and that resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated either that the offense of which the individual was found guilty, including all lesser-included offenses, was not committed by the individual or that no offense was committed by any person.

{¶ 19} In its motion for summary judgment, the state "concede[d] that [Dixon] qualifie[d] under the first four (4) prongs of R.C. 2743.48(A)." (Def.'s Mot. for Summ. Jgmt. at 11.) As such, the parties' arguments in the trial court focused solely on R.C. 2743.48(A)(5).

{¶ 20} In the present appeal, however, the state argues for the first time that Dixon cannot satisfy R.C. 2743.48(A)(4). "It is well-settled that arguments not raised in the trial

court should not be considered for the first time on appeal." *Mullins v. Grosz*, 2010-Ohio-3844, ¶ 29 (10th Dist.), citing *State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections*, 65 Ohio St.3d 175, 177 (1992). *Accord Niehaus v. Columbus Maennerchor*, 2008-Ohio-4067, ¶ 55 (10th Dist.); *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81 (1997). "[W]hile this court's standard of review on a motion for summary judgment is de novo, that standard 'does not supersede [an appellate court's] settled practice of not addressing issues raised for the first time on appeal." *Tucker v. Leadership Academy for Math & Science of Columbus*, 2014-Ohio-3307, ¶ 20 (10th Dist.), quoting *Henson v. Cleveland Steel Container Corp.*, 2009-Ohio-180, ¶ 77 (11th Dist.). Therefore, because the state did not raise any argument regarding R.C. 2743.48(A)(4) in the trial court, we decline to consider the state's argument regarding R.C. 2743.48(A)(4) for the first time on appeal.

{¶ 21} As such, we focus our analysis on R.C. 2743.48(A)(5). Because Dixon did not allege any violation of his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963) to satisfy R.C. 2743.48(A)(5), Dixon had to establish he did not commit the aggravated murder or felonious assault of which he was convicted. Dixon had the burden "of proving his innocence by a preponderance of the evidence." *Walden*, 47 Ohio St.3d 47, at paragraph three of the syllabus. *See Doss*, 2012-Ohio-5678, at paragraph one of the syllabus (noting a claimant must establish "all of the factors in R.C. 2743.48(A) by a preponderance of the evidence before seeking compensation from the state for wrongful imprisonment").

{¶ 22} To establish innocence in a wrongful imprisonment case, the claimant "must produce more evidence than a judgment of acquittal, which is merely a judicial finding that the state did not prove its case beyond a reasonable doubt." *Tubbs Jones*, 1998-Ohio-275, at ¶ 2, citing *Ellis v. State*, 64 Ohio St.3d 391, 393 (1992). *See Doss* at ¶ 17 (noting while an appellate court in a criminal case may find the "evidence was insufficient to sustain the convictions and that the state failed to prove [the claimant's] guilt beyond a reasonable doubt," that "ruling does not answer the question whether [the claimant] can show by a preponderance of the evidence" they are innocent); *Ratcliff v. State*, 94 Ohio App.3d 179, 182 (4th Dist. 1994) (stating "[e]vidence insufficient to prove guilt beyond a reasonable doubt does not necessarily prove innocence by a preponderance of the evidence"). In enacting the wrongful imprisonment statute, "the General Assembly intended that the

court of common pleas actively separate those who were wrongfully imprisoned from those who have merely avoided criminal liability." *Walden* at 52.

{¶ 23} When the state moves for summary judgment in a wrongful imprisonment case, the state "must point to some evidence that affirmatively demonstrates [the claimant] has no evidence to support [their] claim. In response, [the claimant] must set forth sufficient facts to demonstrate that there is a triable issue." *Henderson v. State*, 2007-Ohio-208, ¶ 34 (11th Dist.). In contrast, when the claimant moves for summary judgment in a wrongful imprisonment case, they "must point to some evidence that affirmatively demonstrates that there is no evidence to deny [their] claim for wrongful imprisonment. Then, the state of Ohio is required to respond by setting forth sufficient facts to demonstrate that there is a triable issue." *Id*. at ¶ 35.

{¶ 24} In *Henderson*, the claimant sought to be declared a wrongfully imprisoned individual after an appellate court reversed his rape conviction. The claimant and the state both moved for summary judgment in the wrongful imprisonment case. The claimant supported his motion for summary judgment with his own affidavit denying he raped the alleged victim, the inconclusive results from a sexual assault examination of the victim, and an August 8, 2003 signed statement from the alleged victim recanting her trial testimony. *Id*. at ¶ 36. The state supported its motion for summary judgment with the alleged victim's December 7, 2005 deposition testimony stating "she recanted only [because she] did not want to be put through a third trial, and that Henderson really did sexually assault her." *Id*. at ¶ 39. The trial court granted the state's motion for summary judgment, but the appellate court reversed. The appellate court noted there was "some evidence putting in doubt the innocence of Henderson as well as some evidence that cast[ed] doubt on the credibility of [the state's] primary witness." *Id*. at ¶ 40. Therefore, the "matter [could not] be resolved by way of summary judgment on behalf of either party." *Id*.

{¶ 25} In *Covender v. State*, 2023-Ohio-172 (9th Dist.), the claimant filed suit to be declared a wrongfully imprisoned individual after a court granted his motion for a new trial. The claimant was convicted of felonious sexual penetration and gross sexual penetration involving two juvenile victims in 1996, and moved for a new trial in 2007 after both of the alleged victims recanted their trial testimonies. The claimant and the state both moved for summary judgment in the wrongful imprisonment action. The claimant supported his

motion for summary judgment with several documents, including his own affidavit averring he did not commit the offenses and affidavits from the two alleged victims stating the claimant never touched them inappropriately. *Id.* at ¶ 21-27. The trial court granted the state's motion for summary judgment because it found the claimant "had not established his actual innocence of either of the charged offenses." *Id.* at ¶ 4. The appellate court observed that, "[i]nstead of determining whether a reasonable trier of fact could find [the claimant] was innocent of the offenses, [the trial court] improperly weighed whether [the claimant] 'demonstrated his actual innocence in the briefing before it.' " *Id.* at ¶ 29. The appellate court reversed the award of summary judgment, because it found the claimant's evidence established "there [was] a genuine issue of material fact whether he did not commit the offenses of which he was convicted." *Id.* at ¶ 30.

{¶ 26} In reviewing the court's summary judgment ruling, we must examine the evidence presented by the parties in support of, and in opposition, to the motions for summary judgment. *Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs.*, 2002-Ohio-2878, ¶ 37 (10th Dist.). *See also Moon v. Northwest Airlines, Inc.*, 2000 Ohio App. LEXIS 2503, *12 (10th Dist. June 13, 2000) (noting that, when considering whether the trial court properly granted summary judgment, "this court can only consider the evidence that was before the trial court when it ruled on the summary judgment motion"). Under Civ.R. 56(C), a court considering a summary judgment motion must consider only "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." *See also Open Container, Ltd. v. CB Richard Ellis, Inc.*, 2015-Ohio-85, ¶ 11 (10th Dist.) (noting courts "may consider other forms of evidence than those specified in Civ.R. 56(C) if there is no objection to the evidence").

{¶ 27} Dixon relied on the following evidence to support his motion for summary judgment and his opposition to the state's motion for summary judgment: Nixon's affidavit; Robinson's affidavit; the December 11, 2017 transcript from the hearing on his first motion for a new trial; Judge French's January 25, 2018 decision denying his first motion for a new trial; records demonstrating Dixon and Nixon were both incarcerated at the Jackson Pike workhouse at the same time in 1996; the June 10, 2019 transcript from Nixon's perjury sentencing hearing; Judge Phipps' March 23, 2022 entries granting Dixon's motion for a

new trial and ordering his release from prison; the March 23, 2022 transcript from Robinson's perjury sentencing hearing; and a March 25, 2022 press release from the prosecutor's office stating that "[w]ith both Nixon and Robinson having recanted their trial testimonies, and with no other evidence linking Dixon to the shootings, the State has concluded that the interests of justice require dismissing this case." (Pl.'s Ex. 18.)

{¶ 28} In their affidavits, Nixon and Robinson both averred their trial testimony was not truthful. Nixon stated "Dixon was not the person who shot [him] and Douglas Harvey," and Robinson stated that "Dixon was not the person who shot Douglas Harvey and Ervin Nixon." (Nixon Aff. at ¶ 3; Robinson Aff. at ¶ 3.) Nixon explained his false testimony at Dixon's 1998 trial "was motivated in part by the promise of an early release" on an unrelated prison sentence he was serving at the time. (Nixon Aff. at ¶ 4.) Shortly after the 1998 trial, Nixon was released from prison on shock probation. Nixon further explained that Dixon was a "leader in the Bloods gang in Columbus," while he held "a similar position in the Crips gang," and the "gang rivalry was also a factor in [his] decision to name Marvel[l] Dixon as the shooter." (Nixon Aff. at ¶ 6.) Nixon also stated that Dixon insulted his family when they were both incarcerated at the Jackson Pike workhouse following the shooting, the insult "had an effect on [his] decision" to identify Dixon as the shooter. (Nixon Aff. at ¶ 7.) Nixon noted that Robinson was a "Crip and he would have followed what [Nixon] said whether it was true or not." (Nixon Aff. at ¶ 8.)

{¶ 29} In his affidavit, Robinson explained that in 1996 Nixon told him they "were going to blame Marvell Dixon for the shooting." (Robinson Aff. at ¶ 5.) As such, when officers spoke to Robinson about the shooting in January 1997, Robinson "followed what Ervin Nixon and [he] had discussed." (Robinson Aff. at ¶ 5.) Robinson also noted "Dixon was a member in the Bloods gang in Columbus," while Nixon "held a leadership position in the Crips gang at that time," and that the "gang rivalry was also a factor in [his] decision to name Marvell Dixon as the shooter." (Robinson Aff. at ¶ 6.)

{¶ 30} The state claims the "record is clear that both [Nixon and Robinson] did not see who the shooter was." (Appellee's Brief at 12.) However, at Nixon's June 10, 2019 sentencing hearing, Nixon stated Dixon "didn't do it," noting he had "seen their faces. It wasn't [Dixon]. He didn't do it." (June 10, 2019 Tr. at 28.) Nixon also stated that Dixon was "sitting in prison right now for something [he] didn't do, all because of gang-banging."

(June 10, 2019 Tr. at 25-26.)  At the December 11, 2017 hearing on Dixon's first motion for a new trial, Nixon explained that, while he "didn't know who did [the shooting]," he "[knew Dixon] didn't" do it.  (Dec. 11, 2017 Tr. at 106.)  In his affidavit, Robinson stated "Dixon was not the person [he] *saw* shoot Douglas Harvey and Ervin Nixon."  (Emphasis added.) (Robinson Aff. at ¶ 8.) Viewing these statements in a light most favorable to Dixon, they demonstrate that Nixon and Robinson saw the shooter and could see the shooter was not Dixon.  *See Bliss v. Manville*, 2022-Ohio-4366, ¶ 13 (noting that "[i]n reviewing a motion for summary judgment, the evidence must be construed most strongly in favor of the nonmoving party").

{¶ 31}  In support of its motion for summary judgment and its opposition to Dixon's motion for summary judgment, the state relied on many of the same documents as Dixon including Nixon's and Robinson's affidavits and the transcripts from Nixon's and Robinson's perjury sentencing hearings.  Unlike Dixon, however, the state also relied on the transcript from Dixon's April 1998 criminal trial.  At trial, Robinson and Veney both confirmed they were members of the Crips. Robinson also confirmed that the area around Ohio  and Livingston Avenues was "Blood territory."  (Tr. Vol. III at 240.)  Robinson explained how, when he was driving down Ohio Avenue on the day of the incident, he noticed "several Bloods standing out . . . around a blue Celebrity" parked in front of South Ohio Avenue.  (Tr. Vol. III at 242, 275.)  Robinson knew the individuals were Bloods because they were wearing Bloods' colors, red and black.  When Robinson stopped at the light at Livingston, he looked back at Nixon's car and saw "one of the Bloods shooting over top of a blue Celebrity, shooting at [Nixon's] car." (Tr. Vol. III at 245.) Robinson also stated he was "50 percent" sure that Earl Wilson, a man Robinson knew, was driving the blue Celebrity during the shooting.  (Tr. Vol. III at 297.)

{¶ 32}  The state also presented the testimony of Frank Gable at the April 1998 trial. Gable explained that on the day of the shooting he was sitting on the porch of his sister's house located on South Ohio Avenue.  Gable noted two men wearing red muscle shirts came up to the porch and asked to see his niece, who was behind the house with her boyfriend. Gable identified one of the individuals as Dixon and stated the other individual was Earl Wilson, a man Gable knew as his nephew's friend.  Gable stated that Dixon and Wilson walked to the back of the house to talk to his niece, and when they came back to the front

of the house his niece gave her boyfriend's car to them. Gable described the car as a "sort of a blue Oldsmobile." (Tr. Vol. III at 373.) Gable stated he saw Dixon and Wilson get into the blue car and leave. Gable saw the blue car again "about 10 to 15 minutes" later, heading south on Ohio Avenue. When the blue car got to the intersection at Livingston Avenue, Gable heard "a lot of gunshots," but stated he "couldn't see the ones in the cars when it got that far down." (Tr. Vol. III at 382.) Thus, Gable confirmed he could not see who committed the shooting. (Tr. Vol. III at 419.)

{¶ 33} The state claims the circumstantial evidence indicated Dixon "very likely was the shooter," because the evidence demonstrated Robinson and Nixon were members of the Crips, Dixon was a member of the Bloods, there was a traditional rivalry between the Bloods and Crips, Robinson and Nixon were driving through Blood territory at the time of the shooting, the shooter was a member of the Bloods, and that Dixon was in the car used in the shooting 10 to 15 minutes before the shooting occurred. *See State v. Griesheimer*, 2007-Ohio-837, ¶ 26 (10th Dist.), quoting *State v. Bentz*, 2 Ohio App.3d 352, 355, fn. 6 (1st Dist. 1981), and *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus (explaining that circumstantial evidence is the " 'proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind,' " and that circumstantial evidence and direct evidence " 'inherently possess the same probative value' "); *State v. Aekins*, 2023-Ohio-322, ¶ 79 (10th Dist.) (noting the identity of a perpetrator may be established by circumstantial evidence). While the circumstantial evidence may permit certain inferences, when considering a motion for summary judgment "[e]ven the inferences to be drawn from the underlying facts contained in the affidavits and depositions must be construed in the nonmoving party's favor." *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993), citing *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 433 (1981).

{¶ 34} The trial court in the present case determined that Nixon's and Robinson's recantations did not demonstrate "beyond a preponderance of the evidence that [Dixon] was not the shooter in the underlying criminal action." (Jan. 15, 2025 Decision at 4.) The court concluded there were no "facts in the record demonstrating that [Dixon could] prove his innocence by a preponderance of the evidence." (Decision at 4.) However, to arrive at both of these conclusions, the trial court would have had to weigh Nixon's and Robinson's

affidavits and find both men to either not be credible or that they were less credible than the state's circumstantial evidence. At the summary judgment stage of the litigation, "courts may not weigh the evidence or consider the credibility of witnesses." *Nationwide Mut. Ins. Co. v. Am. Elec. Power*, 2008-Ohio-5618, ¶ 29 (10th Dist.), citing *Santho v. Boy Scouts of Am.*, 2006-Ohio-3656, ¶ 16 (10th Dist.). *See Havely v. Franklin Cty.*, 2008-Ohio-4889, ¶ 36 (10th Dist.), citing *Whiteside v. Conroy*, 2005-Ohio-5098, ¶ 75 (10th Dist.) (stating courts " 'cannot weigh credibility when considering evidentiary material presented in favor of, or in opposition to, a summary judgment motion' "); *Hassan v. Progressive Ins. Co.*, 142 Ohio App.3d 671, 676 (10th Dist. 2001) (noting "the credibility of an affiant is not generally considered when a court determines whether genuine issues of material fact exist").

{¶ 35} Viewing the evidence in Dixon's favor, the evidence demonstrates there are genuine issues of material fact regarding his innocence. Nixon and Robinson were the only two eyewitnesses to identify Dixon as the shooter at the April 1998 trial. Although Nixon testified for the defense rather than the state, he still identified Dixon as the shooter at trial. The two other eyewitnesses, Veney and Gable, both testified they did not see the shooter. Accordingly, without weighing the credibility of their recantations, once Nixon and Robinson recanted their trial testimonies, there was no evidence positively identifying Dixon as the shooter. Furthermore, as noted, Nixon and Robinson both made statements indicating that they saw the shooter and that the shooter was not Dixon.

{¶ 36} Because the record presents genuine issues of fact regarding Dixon's innocence, the trial court erred by granting the state's motion for summary judgment. The trier of fact must determine at a trial on the merits whether Dixon will carry his burden of proof to establish his innocence by a preponderance of the evidence.[3]

---

[3] The state notes that Dixon "did not even submit an affidavit himself claiming he was actually innocent or identifying his whereabouts the night of the shooting." (Appellee's Brief at 14.) While such an affidavit can raise a genuine issue of material fact regarding a claimant's innocence, there is no requirement that a claimant submit such an affidavit in a wrongful imprisonment case. *See Swalley v. State*, 2012-Ohio-5931, ¶ 15 (observing that a claimant's "sworn claim of innocence" in their affidavit "constitutes evidence which, if believed, is sufficient to affirmatively prove [their] innocence" under R.C. 2743.48(A)(5)). Moreover, in his complaint, Dixon alleged he was "completely innocent of the charges that were brought against him." (Compl. at ¶ 22.) "Pleadings" are specifically identified in Civ.R. 56(C) as proper summary judgment material. *See State v. Amatore*, 2010-Ohio-2848, ¶ 37 (7th Dist.) (noting that "pursuant to Civ.R. 56(C), the complaint is appropriate evidence to support summary judgment").

{¶ 37} In his assignment of error, Dixon also contends the trial court erred by denying his motion for summary judgment. Dixon claims the trial court should have granted his motion for summary judgment because Nixon's and Robinson's recantations demonstrate he was not the shooter. However, " '[r]ecanting affidavits and witnesses are viewed with extreme suspicion because the witness, by making contradictory statements, either lied at trial, or in the current testimony, or both times.' " *State v. T.S.*, 2021-Ohio-2203, ¶ 35 (10th Dist.), quoting *State v. Gray*, 2010-Ohio-11, ¶ 29 (8th Dist.). *Accord State v. Jones*, 2006-Ohio-5953, ¶ 25 (10th Dist.), quoting *State v. Florence*, 1997 Ohio App. LEXIS 6082, *4 (2d Dist. Nov. 21, 1997) (noting that " 'evidence which purports to recant trial testimony should be looked on with the utmost suspicion' "). Therefore, because Nixon's and Robinson's recantations present intrinsic credibility issues, their credibility must be assessed at trial.

{¶ 38} Dixon, however, claims that Nixon's and Robinson's recantations were inherently credible because the state sought and secured perjury convictions against both men and because Judge French and Judge Phipps found the recantations to be credible. However, the circumstances surrounding Nixon's and Robinson's perjury convictions are simply facts the trier of fact may weigh when assessing their credibility. *See State v. Poindexter*, 2021-Ohio-1499, ¶ 32 (10th Dist.). Additionally, Judge French's and Judge Phipps' prior credibility determinations occurred in Dixon's criminal case. The present action is a civil proceeding separate from the underlying criminal case. R.C. 2743.48(B)(1). Accordingly, the court in the present case was not bound by the credibility determinations from Dixon's criminal case. *See Reid v. Cleveland Police Dept.*, 2017-Ohio-7527, ¶ 9, 11 (explaining the law of the case doctrine may not be applied to "force a court in a civil case to adhere to an earlier decision in a criminal case," because the doctrine applies "only to subsequent proceedings 'in the same case,' " and therefore "does not limit the actions of a court in another case, even if that case has a party in common with the other case"). The trial court did not err by denying Dixon's motion for summary judgment.

{¶ 39} In the present case, a genuine issue of material fact exists regarding Dixon's innocence under R.C. 2743.48(A)(5) that precludes summary judgment in favor of either party. Therefore, the trial court erred by granting the state's motion for summary judgment

but properly denied Dixon's motion for summary judgment.  As such, we sustain in part and overrule in part Dixon's sole assignment of error.

## IV.  Conclusion

{¶ 40}  Having sustained in part and overruled in part Dixon's sole assignment of error, we affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part and reversed in part*;
*cause remanded.*

BOGGS, P.J., and BEATTY BLUNT, J., concur.

———————